UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

AYYUB ALMUHSIN,                    :
                                   :
          Plaintiff               :        No. 1:16-CV-00365
                                   :
     vs.                          :        (Judge Kane)
                                   :
WARDEN OF DAUPHIN COUNTY          :
PRISON, et al.,                   :
                                   :
                                   :
          Defendants              :

MEMORANDUM

Background

On March 1, 2016, Plaintiff Ayyub Almuhsin, an inmate at the Dauphin County Prison, Harrisburg, Pennsylvania filed a complaint under 42 U.S.C. § 1983[1] against (1) the Warden of the

---

1. Plaintiff's claims are set forth on a form civil right complaint which are routinely provided to pro se litigants. Plaintiff checked the line indicating that the action is filed under 28 U.S.C. § 1331. 28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States." It is also clear, however, that the action is filed pursuant to 42 U.S.C. § 1983. Section 1983 reads, in relevant part, as follows:

     Every person who, under color of any statute,
     ordinance, regulation, custom, or usage, of any State
     or Territory or the District of Columbia, subjects, or
     causes to be subjected, any citizen of the United
     States or other person within the jurisdiction thereof
     to the deprivation of any rights, privileges, or
     immunities secured by the Constitution and laws, shall
     be liable to the party injured in an action at law,
     suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Dauphin County Prison,[2] (2) Isaiah Rotan Rotan ("Rotan"), an inmate at the Dauphin County Prison, and (3) several unnamed correctional officers. (Doc. Nos. 1 & 1-1.)  In the complaint Almuhsin claims that on November 13, 2015, he was stabbed four times with a homemade shank by Rotan and that the correctional officers after intervening subjected Plaintiff to excessive force. Id.  He further claims that the correctional officers were negligent in failing to search all inmates before they left their cells for recreation, and if they had done so, they would have discovered the shank. Id.  With respect to the claim of excessive use of force, Plaintiff claims that after the stabbing he was bleeding and complied with all of the correctional officers commands and did not resist but after applying handcuffs and placing him on the ground the correctional officers sprayed him with "pepper spray" and then "dragged" him "down to administrative lock down" where they punched, kicked and kneed him while in handcuffs and bleeding from his wounds. Id.

With respect to the Warden of Dauphin County Prison, there are no allegations leveled against the Warden indicating he had any personal involvement in the incident.  As relief, Plaintiff requests compensatory damages in a total amount of $62,000.00. Id.  Along with the complaint, Plaintiff filed a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915. (Doc. No. 2.)

---

2.  Plaintiff does not provide the name of the Warden.

The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., the full filing fee ultimately must be paid (at least in a non-habeas suit).  Also, a new section was added which relates to screening complaints in prisoner actions.[3]  For the reasons outlined below, Plaintiff will be granted in forma pauperis status, the complaint will be dismissed and Plaintiff will be granted an opportunity to submit an amended complaint.

## Discussion

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989).  Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks

---

3.  Section 1915(e)(2) provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

an arguable basis in law or that the defendants are clearly entitled to immunity from suit . . . ." <u>Roman v. Jeffes</u>, 904 F.2d 192, 194 (3d Cir. 1990) (quoting <u>Sultenfuss v. Snow</u>, 894 F.2d 1277, 1278 (11th Cir. 1990)).  The Supreme Court has recognized that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ." <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992); <u>see also</u> <u>Roman</u>, 904 F.2d at 194 (baseless factual contentions describe scenarios clearly removed from reality).  The Third Circuit added that "the plain meaning of 'frivolous' authorizes the dismissal of <u>in forma pauperis</u> claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." <u>Deutsch v. United States</u>, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. <u>Denton</u>, 504 U.S. at 33.

Even though a complaint is not frivolous it still may be dismissed under the screening provision of the PLRA if it fails to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6) is the basis for this type of dismissal.  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." <u>Fowler v.
UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.2009) (quoting <u>Phillips
v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir.2008)).  While a
complaint need only contain "a short and plain statement of the
claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are
not required, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555,
127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must
plead "enough facts to state a claim to relief that is plausible
on its face."  <u>Id.</u> at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974,
167 L.Ed.2d 929.  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
(2009) (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965.)
"[L]abels and conclusions" are not enough, <u>Twombly</u>, 550 U.S. at
555, 127 S.Ct. at 1964-65, and a court  "'is not bound to accept
as true a legal conclusion couched as a factual allegation.'" <u>Id.</u>,
127 S.Ct. at 1965 (quoted case omitted).

        In resolving the issue of whether a complaint states a
viable claim, we thus "conduct a two-part analysis." <u>Fowler</u>,
<u>supra</u>, 578 F.3d at 210. First, we separate the factual elements
from the legal elements and disregard the legal conclusions. <u>Id.</u>
at 210-11.  Second, we "determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a
"'plausible claim for relief.'" <u>Id.</u> at 211 (quoted case omitted).

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-581 (2003);  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach.  Martinez v. California, 444 U.S. 277, 285 (1980).[4]  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights.  See Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Plaintiff must allege that each named defendant was personally involved in the events or occurrences that underlie the claim.  See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003),

---

4.  The Martinez court explained: "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  Id.

(citations omitted).  Liability may not be imposed under Section 1983 on the principle of respondeat superior.  <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989) (citing <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976)).  Rather, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  <u>Id.</u> at 106 n.7.

    With respect to the Warden of the Dauphin County Prison, there are no allegation in the complaint from which it could be concluded that the Warden was involved in the incident which occurred on November 13, 2015.  There is no basis to conclude that he knew of, participated in or acquiesced in any unlawful conduct.  Consequently, the claims against the Warden will be dismissed.

    As for inmate Rotan, he is a private party and not employed by any state agency.  Only in rare situations will a private party be considered a state actor. <u>See Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 933 (1982).  Such a situation exists where a private party conspires with an individual employed by the state. <u>Id.</u>; <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980)("Private persons, jointly engaged with state official in the challenged action, are acting 'under color' of law fo purposes of § 1983 actions.").  There are no allegations in the complaint establishing such a conspiracy.  An inmate of a state correctional facility, unless involved in a conspiracy with state actors, cannot be sued under § 1983. <u>Simonton v. Tennis</u>, 437 F. App'x 60.

62 (3d Cir July 13, 2011); <u>Lane v. Walsh</u>, 2015 WL 3866043, at *6
(M.D.Pa. June 13, 2015).   Furthermore, Plaintiff has set forth no
other viable jurisdictional basis for suing Rotan.[5] Consequently,
the claims against Rotan will be dismissed.

With regard to the correctional officers, Plaintiff does
not identify them by name and they are considered "John Doe"
defendants.   There are essentially two claims against these "John
Doe" defendants: (1) a failure to protect claim, and (2) an
excessive force claim.

In the context of a correctional officer failing to
prevent assaults by other inmates, a plaintiff must prove more
than that he had a fight with another inmate, <u>see</u> <u>Beard v.</u>
<u>Lockhart</u>, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent
conduct that leads to serious injury of a prisoner by a prisoner
does not expose a prison official to liability. <u>Davidson v.</u>
<u>Cannon</u>, 474 U.S. 344, 347-48 (1986). To succeed, a prisoner must
show that: (1) he was incarcerated under conditions posing a
substantial risk of serious harm; (2) the defendant was "aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists"; (3) the defendant actually drew this
inference; and (4) the defendant deliberately disregarded the
apparent risk. <u>Farmer</u>, 511 U.S. at 834-37.

_____

5.   <u>See</u> 28 U.S.C. § 1367(a)(supplemental jurisdiction for state
law tort claims).

Plaintiff has failed to allege sufficient facts to establish a failure to protect claim.  There are no allegations from which it could be concluded that the unknown correctional officers were aware of facts from which it could be inferred that Rotan posed a danger to Plaintiff and that they actually drew that inference and disregarded the risk.  Consequently, the failure to protect claims against the correctional officers will be dismissed.

As for the excessive force claims, although prisoners are protected from cruel and unusual punishment by the Eighth Amendment, not all tortious conduct which occurs in prison rises to the level of an Eighth Amendment violation.  See Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972) (Not all tortious conduct redressable under state law constitutes cruel and unusual punishment).  "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973).  If a correctional officer uses physical force in pursuit of valid penological or institutional goals, then the force used will rarely, if ever, violate the Eighth Amendment.  See Whitley v. Albers, 475 U.S. 312 (1986); Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

In order to constitute cruel and unusual punishment, the correctional officer's use of force must involve the "unnecessary

9

and wanton infliction of pain." <u>Whitley</u>, 475 U.S. at 319.
"Wanton" has been defined as requiring that the correctional
officer has intended to harm the inmate. <u>Sampley v. Ruettgers</u>,
704 F.2d 491, 495 (10th Cir. 1983). "Unnecessary" has been held
to require that the force used exceed that which appeared
reasonably necessary to maintain or restore discipline at the time
of the use of force. <u>Id.</u> Finally, "pain" requires more than
momentary discomfort; the attack must have resulted in either
severe pain or a lasting injury. <u>Id.</u>

However, the United States Supreme Court in a later
ruling recognized that the use of force may constitute cruel and
unusual punishment even if the prisoner does not sustain serious
physical injuries. <u>Hudson v. McMillan</u>, 503 U.S. 1, (1992). The
Court added that the core judicial inquiry is whether force was
applied in a good faith effort to maintain or restore discipline
or maliciously and sadistically to cause harm.

A court must look to a number of factors to determine
whether the corrections officer, through his conduct, has "crossed
the constitutional line." <u>Johnson</u>, 481 F.2d at 1033. In <u>Whitley</u>,
the Supreme Court, relying on <u>Johnson</u>, listed the following
factors which a court should consider: (1) the need for
application of force; (2) the relationship between the need and
the amount of force used; (3) the extent of injury inflicted; (4)
the extent of the threat to the safety of staff and inmates as
reasonably perceived by responsible officials on the basis of

10

facts known to them; and (5) any attempts made to temper the severity of the forceful response.  Whitley, 475 U.S. at 321.

It must also be kept in mind that a correctional officer, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force.  See Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974). Courts should be hesitant "to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance."  Whitley, 475 U.S. at 320.

Plaintiff has alleged that he was handcuffed, not resisting and on the ground when pepper sprayed.  He also claims that he was dragged to an administrative holding cell and while in handcuffs was punched, kicked and kneed by the correctional officers.  This allegedly occurred in spite of Plaintiff's non-resistance.  Based on these allegations, Plaintiff has sufficiently stated an excessive force claim.

However, Plaintiff has not identified the correctional officers responsible for the assault and, consequently, it is impossible to serve the complaint. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants.  Sheetz v. Morning Call, 130

11

F.R.D. 34 (E.D. Pa. 1990).  Thus, this court will grant Plaintiff ninety (90) days from the date of this order to file an amended complaint in which he properly identifies by name the correctional officers who assaulted him.  Furthermore, within the same time period Plaintiff may file an amended complaint against the Warden of Dauphin County Prison and inmate Raton.  If plaintiff fails to timely identify the correctional officers, they shall be dismissed from this action under the authority of <u>Sheetz</u>.  Likewise, if Plaintiff's fails to file an amended complaint setting forth claims against the Warden and inmate Raton, the case will be closed.

An appropriate order will be entered.